# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BARRERA, | Case No. 1:16-cv-01466-SAB |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 20, 23, 24) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff David Barrera ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for a period of disability, disability insurance benefits, and supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from lumbar degenerative disc disease; a major depressive disorder, single episode, moderate; vascular dementia; hypertension; hyperlipidemia; and insomnia. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted in part and remanded for further administrative proceedings.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 7, 9.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on September 14, 2012. (AR 243-251, 254-260.) Plaintiff's applications were initially denied on January 18, 2013, and denied upon reconsideration on July 17, 2013. (AR 164-168, 172-176.) Plaintiff requested and received a hearing before Administrative Law Judge Cynthia Floyd ("the ALJ"). Plaintiff appeared for a hearing on January 8, 2015. (AR 36-68.) On March 4, 2015, the ALJ found that Plaintiff was not disabled. (AR 16-30.) The Appeals Council denied Plaintiff's request for review on July 25, 2016. (AR 1-6.)

### A.        Relevant Hearing Testimony

Plaintiff appeared with counsel[2] and testified at the January 8, 2015 hearing. (AR 36-68.) Plaintiff was born on February 22, 1959, and was 55 years old on the date of the hearing. (AR 40.) He lives alone in an apartment. (AR 41.) He is single and does not have any children. (AR 41.) Plaintiff completed 10th grade and does not have a GED. (AR 42, 53.)[3] He has not had any vocational training, but he does have a Class I license. (AR 42.) He has problems reading and writing that have gotten worse since 2011. (AR 53.)

Plaintiff has a valid driver's license and there are no restrictions on it. (AR 41.) He does not have a vehicle, so he uses a city bus for transportation 3 to 4 times a week. (AR 42.) The only place he goes is to the grocery store. (AR 42.) Plaintiff also takes the bus to the doctor's office. (AR 52.)

Plaintiff has not worked since his alleged onset date of April 1, 2011. (AR 42.) He has not applied for any jobs since that date. (AR 42.) He last worked in 2011 as an in-home care provider assisting his client and doing daily tasks in her home. (AR 43.) He worked full-time at Universal Marketing Wholesale as a Class I driver in 1998 and 1999. (AR 43.) He drove a two-

---

[2] Counsel appeared by telephone. (AR 38.)

[3] Although he had filled out a form stating that he only finished 8 years of school, he believes that it was actually 10 years. (AR 53.)

ton bobtail truck with a lift. (AR 44.) He did not do any driving between 2000 and the time of the hearing. (AR 44.) He stopped working as a driver because of his lower back problems and he could not lift anymore. (AR 44.) He received unemployment benefits for a year and a half, which he thinks was in 2008 and 2009; and he did not apply for benefits after 2010. (AR 45.)

Plaintiff cannot work because of his anxiety and mental stress. (AR 45.) He has had memory problems since 2011 where he cannot remember what he is doing. (AR 45.) He has trouble maintaining attention and concentration, such as not comprehending and quickly processing instructions and everything is slow. (AR 45-46.) He has problems making decisions because he gets frustrated and cannot follow through with the decision. (AR 46.) He states he somewhat has problems relating to others because he is drawn to himself, cannot communicate well, and does not like communicating. (AR 46.) He has anxiety daily and he also has nightmares where he cannot rest at night. (AR 46.) He thinks that he would have trouble getting to work and being there regularly when he is supposed to be there. (AR 53.) He does not think he could make it through a whole day of work. (AR 53-54.)

Plaintiff takes medications daily to help his anxiety and they help. (AR 46-47.) They calm him to where he can try to process things better and focus on what he is doing. (AR 47.) He also goes to therapy weekly at Sierra Vista Clinic where he sees a therapist, Mark Jackson. (AR 47-48.) The therapy helps because "[i]t relieves a little bit" and he can explain what he is going through. (AR 48.) Mr. Jackson helps Plaintiff control his feelings, nightmares, and anxieties. (AR 48.)

Plaintiff watches TV, but he has problems concentrating on a two-hour movie. (AR 51-52.) He normally wakes up at 9 a.m., prepares a meal to eat, gets dressed, sits down, and then goes downstairs and sits on the couches in the lobby of his building. (AR 55.) He talks to people if they talk to him and he smiles at everybody, but he does not get into lengthy communications. (AR 55-56, 65.) He talks to most people in the lobby. (AR 56.) He stays in the lobby until he gets hungry around 1:00 p.m. and then he goes back to his apartment and makes himself something to eat and watches TV. (AR 56.) For meals, he usually opens a can of soup or makes a sandwich. (AR 65.) He also sits outside on the mall if the weather is nice. (AR

56.)  He goes to check the mailbox and then goes back to his apartment and lies down.  (AR 56.)  If he is feeling bad during the day, he will lie down.  (AR 65-66.)

The bus stop is right across the street from where he lives.  (AR 56.)  The doctor's office is right across the street from a bus stop.  (AR 56.)  He goes to Grocery Outlet on the bus which is about four to six blocks away.  (AR 56-57.)  He does not have any hobbies.  (AR 57.)  He washes dishes, does laundry, cleans his apartment, and changes his linens on his bed, but he is slower than he was prior to his alleged disability date.  (AR 57, 66.)

Plaintiff's lower back and feet affect his ability to work.  (AR 48.)  His feet swell and he has constant back pain, but he has medication for it.  (AR 48-49.)  Before medication, his back pain is a 10, but it is a 5 after medication.  (AR 49.)  The back pain affects his walking because pain goings up and down his spine and neck and there is a "real heavy feeling" pulling him down.  (AR 49.)  He can walk two blocks and then the pain gets more intense.  (AR 49.)  He can stand for 1 hour before he has to sit down because of the pain and elevate his feet and rest for approximately 20 to 45 minutes.  (AR 50.)  He can sit for 30 minutes and then he has to get up and move because of the pain which is like numbness in his legs and buttocks.  (AR 50.)

Plaintiff also has weak ankles and he gets a severe pain and needles feeling on the bottom of his feet.  (AR 50.)  He was diagnosed as borderline diabetic so he thinks this is the cause of the pins and needles feeling.  (AR 51.)  He does not take any medicine for diabetes because they are trying to see if he can control it with diet. (AR 51.)  He follows the prescribed diet.  (AR 51.)

Plaintiff is most comfortable when he is lying down.  (AR 54.)  He spends more time lying down than in other positions.  (AR 54.)  He uses heat and ice for his lower back and neck.  (AR 54.)  He has never tried braces and has never used or needed a cane or crutch.  (AR 54-55.)

Cheryl R. Chandler, a vocational expert ("VE") also testified at the hearing.  (AR 58-64, 67.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015.

- Plaintiff has not engaged in substantial gainful activity since April 1, 2011, the alleged onset date.

- Plaintiff has the following severe impairments: lumbar degenerative disc disease; a major depressive disorder, a single episode, moderate; and vascular dementia.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity ("RFC") to perform a range of work at the medium exertional level. Specifically, he can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently, stand and walk approximately 6 hours and sit approximately 6 hours in an 8-hour workday. Plaintiff is also able to frequently stoop, kneel, climb, crouch, balance, and crawl. In addition, he is limited to performing only simple routine tasks.

- Plaintiff is capable of performing past relevant work as a merchandise deliverer. This work does not require the performance of work-related activities precluded by Plaintiff's RFC.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2011, through the date of the decision.

(AR 19-30.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is

disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the RFC to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by failing to provide legally adequate reasons to reject the opinions of the Dr. Portnoff, Dr. Reinfurt, and Dr. Vesali; failing to provide clear and convincing reasons to reject Plaintiffs testimony; and the RFC assessment is not supported by substantial evidence and free of legal error. Defendant counters that the ALJ thoroughly evaluated the medical evidence and provided legally sufficient reasons to reject the "extreme" medical opinions. Further, Defendant contends that the ALJ properly considered Plaintiff's failure to comply with treatment recommendations, daily activities, and the objective medical evidence in making the credibility finding. Plaintiff replies that the Court cannot consider the post hac rationalizations provided by Defendant and is limited to the reasons provided by the ALJ in the opinion finding Plaintiff to not be disabled.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ erred in finding his allegations not fully credible. Defendant counters that the ALJ properly found Plaintiff's allegations not fully credible.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

Here, the ALJ found Plaintiff not fully credible and found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible for the reasons explained in the decision. (AR 28.)

1. Leaving Hospital Against Medical Advice on November 27, 2012

The ALJ rejected Plaintiff's credibility because Plaintiff left the hospital on November 27, 2012, against medical advice when a clinician would not complete his paperwork for supplemental security income. (AR 28.) The ALJ found that this indicates that his condition was not as severe as alleged and detracts from the credibility of his allegations. (AR 28.)

The November 27, 2012 report from Plaintiff's hospital visit for high blood pressure

indicates:

> [Patient] declined further work-up after it became clear I would not fill out his SSI paper work. I encouraged him to stay for work-up of end-organ damage, but he declined. I was notified that the patient wished to leave AMA. I went and spoke to the patient and related the risk of not diagnosing and treating the cause of his hypertension, including Heart attack, kidney failure, stroke, grave illness, and death. Patient acknowledged these risks, and stated that he still refused admission/further work-up. [H]e appears to have the capacity to make this decision. I gave him the opportunity to ask questions and made clear he could return at any time if he changed his mind. He stated he would follow up with the internal medicine clinic in a few days.

(AR 401.)

While Plaintiff left the hospital after the examining clinician would not fill out his paperwork for supplemental security income, this does not show that his high blood pressure issues were not as severe as alleged and detract from his credibility. As the ALJ noted, Plaintiff declined further workup against medical advice on November 27, 2012, but the report indicates that Plaintiff's blood pressure was severe and Plaintiff indicated during that hospital visit that he would follow up with the internal medicine clinic in a few days. (AR 28, 401.) He then sought an evaluation of his hypertension at a different facility on December 3, 2012. (AR 427.)[4] The Court notes that Plaintiff testified that he was unable to work because of issues with his back, anxiety, and mental stress, but did not allege that hypertension limited his ability to work. (AR 44-45, 48.) Therefore, the Court finds that the ALJ's finding regarding Plaintiff leaving the hospital against medical advice on November 27, 2012 is not a clear and convincing reason to discredit Plaintiff's testimony.

2. Objective Findings

The only remaining reason that the ALJ provided for finding Plaintiff not fully credible is that his allegations are inconsistent with the objective medical findings. (AR 28.) The ALJ

---

[4] Defendant asserts that Plaintiff did not receive any treatment for his physical condition until June 2013 and visited the clinic only 5 more times during the course of his 16-month treatment period. However, the ALJ did not provide this as a reason for rejecting Plaintiff's credibility. Therefore, the Court will not consider this post hoc reason. Although the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 775 (9th Cir. 1989), it cannot consider Defendant's post hoc rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).

found Plaintiff's allegation of an irregular heartbeat,[5] testimony and reports of significant physical limitations, and allegation that his ability to use his hands is "affected" are inconsistent and unsupported by the medical evidence. (AR 28.)

The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). However, "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)). The Social Security regulations state that objective medical evidence is a useful indicator to assist in making reasonable conclusions about the intensity and persistence of a claimant's symptoms and the effect those symptoms on the claimant's ability to work. 20 C.F.R. § 404.1529(c)(2). However, a claimant's statements about the intensity and persistence of his pain or other symptoms cannot be rejected solely because the available objective medical evidence does not substantiate the statements. 20 C.F.R. § 404.1529(c)(2).

Therefore, Plaintiff's credibility cannot be rejected solely on the ground that it is not fully corroborated by objective medical evidence. See Rollins, 261 F.3d at 857. Thus, the ALJ erred by failing to provide clear and convincing reasons supported by substantial evidence for finding Plaintiff not fully credible.

### B.    Medical Opinions and RFC

If the claimant has established that he has a severe impairment but has not demonstrated that his impairment or combination of impairments meets or equals a listed impairment, the ALJ goes to step four to determine if the claimant possesses the RFC to perform his or her past relevant work. Stout, 454 F.3d at 1052. A claimant's RFC is "the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). The RFC is "based on all the relevant

---

[5] The ALJ pointed out that Plaintiff alleged suffering from an irregular heartbeat in the February 6, 2013 disability report. (AR 28, 310.) The ALJ also pointed out that on September 11, 2014, Dr. Robert Jablonsky found that Plaintiff had a regular heart rate and rhythm with no murmurs, gallops, or rubs during examination. (AR 28, 515.) However, the Court notes that on December 9, 2013, Plaintiff had a mild S1 decrescendo murmur heard best at "L base." (AR 469.)

evidence in [the] case record." 20 C.F.R. § 416.945(a)(1). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c), as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e)." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion "may be rejected only for clear and convincing reasons, and when an examining physician's opinion is contradicted by another doctor, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record." Bell v. Astrue, 640 F. Supp. 2d 1247, 1252 (E.D. Cal. 2009).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)).

The ALJ discussed the mental impairments and physical impairments and the opinions for each separately. The Court shall first address Plaintiff's RFC for his physical impairments.

1. Physical Impairments

The record contains no treating medical source statement as to Plaintiff's physical RFC. The only medical opinions regarding Plaintiff's physical impairment are Dr. Fariba Vesali, who performed a consultative comprehensive orthopedic evaluation, and Dr. A. Nasrabadi and Dr. R. Fast, who are state agency reviewing medical consultants. Plaintiff asserts that the ALJ erred in rejecting all of these opinions and argues that the ALJ's finding that Plaintiff could perform medium work not based on any medical opinion of record. Defendant counters that the ALJ properly evaluated the medical and opinion evidence for Plaintiff's complaints of low back pain and properly assessed the physical RFC. In his reply, Plaintiff contends that the ALJ's decision is based on her lay interpretation of the medical and psychiatric evidence and that the RFC is

based on insubstantial evidence.

a.     **The ALJ provided a specific and legitimate reason to reject Dr. Vesali's opinion that was supported by substantial evidence in the record**

Here, the ALJ considered a November 27, 2012 x-ray of the lumbar spine that showed mild disc space narrowing at L4-L5 in conjunction with lower lumbar facet arthropathy and some marginal osteophyte formation. (AR 24, 403.) The ALJ also noted that Plaintiff had not seen a doctor in years. (AR 24, 400.) On November 27, 2012, Plaintiff exhibited normal range of motion, with no tenderness or edema and full strength in all extremities and he was asymptomatic with 5/5 strength in all extremities and normal muscle tone. (AR 24, 400-401.) Subsequent examinations were generally unremarkable. (AR 24, 425, 426, 427, 457-458, 460, 469, 480, 486, 487, 515.) On December 9, 2013, Plaintiff reported no transient weakness. (AR 24, 468.) The ALJ also considered a December 26, 2014 x-ray of the lumbar spine that showed some mild to moderate degenerative changes. (AR 24, 540.)

The ALJ considered that on November 26, 2012, Fariba Vesali, M.D., performed a consultative comprehensive orthopedic evaluation. (AR 24, 394-397.) Dr. Vesali diagnosed Plaintiff with chronic low back pain and found that straight leg raising test in supine position is positive on the left side and walking on toes exacerbates the low back pain. (AR 396.) He opined that with controlled blood pressure Plaintiff could walk and stand 4 hours in an 8-hour workday with breaks every 30 minutes for rest; sit 6 hours in an 8-hour workday with breaks every hour for stretching; lift and carry 20 pounds occasionally and 10 pounds frequently; and occasionally do postural activities. (AR 396-397.) The ALJ discounted and gave little weight to this opinion finding it inconsistent with the other evidence. (AR 24.) The ALJ then explained that it is over-restrictive in light of a treatment report from the next day and that the opinion is discounted because Dr. Vesali did not review any medical records and the opined limitations are inconsistent with subsequent physical examinations, which were generally unremarkable. (AR 24.)

Plaintiff argues that the fact that the subsequent medical record fails to show any examination findings is irrelevant because Dr. Vesali's examination did show limited range of

motion in Plaintiff's hips, a positive straight leg test on the left, and a positive Patrick's test. Defendant counters that the ALJ properly considered that Dr. Vesali's opinion was inconsistent with the medical record which showed generally unremarkable examination findings and a November 2012 x-ray of Plaintiff's lumbar spine which showed only mild disc space narrowing and some marginal osteophyte (bone spur) formation (AR 403), and a December 2014 x-ray of the cervical and lumbar spine which merely showed mild to moderate degenerative changes (AR 540). Defendant contends that the medical record does not demonstrate the type of treatment and findings that one would expect to find given the limitations opined by Dr. Vesali. In response, Plaintiff argues his interpretation of the medical testing performed by Dr. Vesali, however it is not for this Court to interpret the medical evidence but to determine if the ALJ provided, in this instance, a specific and legitimate reason to reject Dr. Vesali's opinion that is supported by substantial evidence in the record. Garrison, 759 F.3d at 1012.

The ALJ meets his burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings." Magallanes, 881 F.2d at 751. In this instance, the ALJ set forth the conflicting evidence in the record and stated his interpretation and the reasons for his findings. While the evidence in the record may be subject to a different interpretation, the ALJ reasonably found that Dr. Vesali's opinion was overly restrictive given the inconsistency with subsequent objective examination findings in the record as whole. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch, 400 F.3d at 679. The ALJ's finding that Dr. Vesali's opinion is inconsistent with subsequent medical evidence in the record is a specific and legitimate reason supported by substantial evidence in the record to reject his opinion.

To the extent that the ALJ erred by discounting Dr. Vesali's opinion because Dr. Vesali did not review any medical evidence, any such error would be harmless as the ALJ provided a specific and legitimate reason to reject the opinion. Molina, 674 F.3d at 1115.

/ / /

/ / /

**b. The physical residual functional capacity is not supported by substantial evidence**

Plaintiff argues that the ALJ erred by rejecting all physician opinions and coming up with a residual functional capacity that does not have support in the record. Both Dr. Nasrabadi and Dr. Fast opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8-hour workday, and stand and walk about 6 hours in an 8-hour workday. (AR 78, 93, 128, 145.) They also opined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 78-79, 93-94, 128, 145.) The ALJ discounted and afforded little weight to these opinions as they "appear[ed] to be based upon the findings and opinion of Dr. Vesali (see Exhibit 2F), which as discussed above were discounted and given little weight because they were over-restrictive in light of the objective medical evidence." (AR 25.)

The ALJ found that Plaintiff could lift and carry 50 pounds and occasionally lift and carry 25 pounds, stand and walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. (AR 23.) The ALJ also limited Plaintiff to frequent stooping, kneeling, climbing, crouching, balancing, and crawling. (AR 23.)[6] The ALJ determined that the RFC for medium work "is most consistent with the evidence and adequately accounts for his severe physical impairment, especially in light of the generally unremarkable physical examination findings (see Exhibit 10F)." (AR 25.)

On reconsideration, the agency physician noted that the orthopedic consultative examination "was essentially normal except for mildly decreased ROM and + SLR on the left with a normal gait." (AR 124.) It was also noted that Plaintiff was not taking any pain medications or receiving any medical treatment and there were no physical limitations noted during his October 2012 interview. (AR 124.) Considering this, Dr. Fast agreed with affirming the light RFC. (AR 124.)

All the physicians who reviewed the medical evidence found that Plaintiff had the RFC to

---

[6] The Court notes that the physical RFC is actually consistent with several of the limitations opined by Dr. Nasrabadi and Dr. Fast. While the ALJ stated that she was discounting and giving little weight to the opinions of the state agency reviewing physicians for physical impairments, the RFC of standing and walking approximately 6 hours and sitting approximately 6 hours in an 8-hour workday is consistent with the state agency reviewing physicians' opinions. (AR 23-25.)

perform light work.  However, the ALJ rejected all the physician opinions and substituted her own opinion in lieu of the opinion of Dr. Vesali and the opinions of Dr. Nasrabadi and Dr. Fast. The ALJ did not cite to any evidence in the record that would be substantial evidence to support the RFC finding.  The Court finds that the ALJ's determination that Plaintiff was able to perform medium work is not supported by substantial evidence in the record.[7]

Accordingly, the Court finds that the ALJ erred in assessing Plaintiff's physical RFC.

2.    Mental Impairments

Plaintiff argues that the ALJ erred in finding that he can perform simple routine tasks with no other mental limitations by erroneously rejecting the opinions of Drs. Portnoff and Reinfurt and the state agency psychologists who reviewed the case.  Defendant counters that the ALJ properly evaluated the medical record as a whole to assess Plaintiff's mental limitations and provided legally valid reasons to discount the extreme opinions of Drs. Portnoff, Reinfurt, Aquino-Caro and Garland.  Plaintiff replies that the opinion of Dr. Reinfurt is most probative of his mental functioning and if accepted would demonstrate that he is disabled.

a.    **Dr. Portnoff's Opinion**

Plaintiff argues that while the ALJ accepted Dr. Portnoff's opinion that Plaintiff could perform simple, repetitive tasks, the ALJ impermissibly rejected Dr. Portnoff's opinion in six functional areas.

Dr. Portnoff performed a consultative comprehensive psychiatric evaluation on November 16, 2012.  (AR 387-391.)  Plaintiff arrived on time and took a bus to the appointment. (AR 387.)  Dr. Portnoff did not review any records.  (AR 387.)  Plaintiff's chief complaints were mental stress and lower back pain.  (AR 387.)  Dr. Portnoff found that Plaintiff demonstrated adequate concentration, persistence, and pace in the current exam.  (AR 388.)  Plaintiff had mild psychomotor fidgeting.  (AR 388.)  No abnormal movements were discerned.  (AR 388.)  Eye contact was good and facial kinetics is mildly reduced.  (AR 388.)  Speech was spontaneous and

---

[7] Plaintiff contends that a limitation to sedentary work would prevent him from performing his past relevant work. He also contends that if he is limited to sedentary work and considering his age, education, and transferable skills, he meets the criteria for disabled in the Medical-Vocational Rules.  However, the ALJ will have to reassess Plaintiff's RFC on remand.  Further, the Court notes that Dr. Nasrabadi and Dr. Fast opined that he had a light RFC.

prompt with normal tone and tempo without evidence of aphasia. (AR 388.) Receptive language comprehension was grossly intact. (AR 388.) Process of thought was coherent but moderately rambling and mildly confused. (AR 388.) Thought content was appropriate to situation. (AR 388.) Plaintiff described his mood as depressed. (AR 388.) Affect was characterized by moderate, anxious depression. (AR 388.) Plaintiff was oriented to time, and place and was in touch with immediate surroundings. (AR 388.) Plaintiff's immediate recall was intact. (AR 388.) Recent recall was 1/3. (AR 388.) Plaintiff was able to remember autobiographical information. (AR 388.) Fund of knowledge lacking, but Plaintiff could perform simple math calculations. (AR 388.) Plaintiff was able to count backwards from 20. (AR 389.) Social judgment was found to be inadequate. (AR 390.) Clock drawing was impaired Plaintiff drew a lopsided clock with disjointing at connection point, but number localization and hand placement were intact. (AR 390.) Index finger tapping for 10 second trial was 10 for right hand and 14 for left hand, both very slow and suggest peripheral rather than cortical motor deficit. (AR 390.) Testing for agraphesthesia was vitiated by Plaintiff's confusion. (AR 390.) Plaintiff had adequate insight into his psychiatric symptoms and need for treatment. (AR 390.)

Dr. Portnoff diagnosed Plaintiff with vascular dementia; major depressive disorder, single episode, moderate; post-traumatic stress disorder, chronic; and a GAF of 52. (AR 390.) He found that the prognosis for the MDD/PTSD is fair, depending upon underlying health/homelessness and access/response to an appropriate psychotropic regimen. (AR 390.) He found that the prognosis for the mild dementia is probably poor, absent treatment for his diabetes and hypertension. (AR 390.) Dr. Portnoff opined that Plaintiff can perform simple and repetitive tasks, but has moderate limitations in performing detailed and complex tasks. (AR 391.) He opined that Plaintiff has moderate limitations in all other areas of mental functioning and that Plaintiff is not capable of managing his funds independently. (AR 391.)

The ALJ discounted Dr. Portnoff's opinion finding it inconsistent with the other evidence, for example the moderate limitations are inconsistent with the treatment records showing that Plaintiff's condition was improving, and because Dr. Portnoff did not review any of

Plaintiff's medical records. (AR 26.)

The ALJ discounted Dr. Portnoff's opinion because he did not review any of Plaintiff's medical records. (AR 26.) Plaintiff asserts that the ALJ impermissibly discounted the opinion based on the lack of review of medical records because Dr. Portnoff's opinion is properly based on significant clinical findings from his psychiatric evaluation of Plaintiff and his specialized expertise in neuropsychology. Plaintiff asserts that Dr. Portnoff's opinion deserves the weight of an examining specialist's opinion.

The fact that Dr. Portnoff did not review any medical records is not in itself a specific and legitimate reason supported by substantial evidence to reject his opinion. The appropriate question is whether medical records that are part of the administrative record would have changed or called into question the opinion.

The ALJ assessed a mental RFC of simple, routine tasks with no other mental limitations. (AR 23.) There is no treating medical opinion regarding Plaintiff's mental limitations.[8] The ALJ gave little weight to Dr. Portnoff's opinion finding it inconsistent with the other evidence, and noted that "moderate limitations in most areas of mental functioning is inconsistent with treatment reports from Dr. Baca-Morgan and Mr. Jackson, which indicated [Plaintiff's] condition was improving." (AR 26.) Therefore, the Court considers whether the medical record indicates that Plaintiff's mental condition was improving.

Plaintiff argues that the exhibits cited to, Dr. Baca-Morgan's treatment records and Mr. Jackson's treatment records, do not show that Plaintiff's mental impairments no longer seriously affected his ability to work. Plaintiff states that Mr. Jackson's treatment notes indicate "some progress" on May 12, 2014 (AR 494) and "minimal progress" on September 8, 2014 (AR 508), but argues that these are inadequate to reject Dr. Portnoff's opinion. Plaintiff also points out that he had a lower GAF score in October 2014 than November 2013 which Plaintiff contends is indicative of a downward spiral of his mental functioning. Defendant points to several examples

---

[8] As the ALJ noted, the record contains three medical provider forms for Plaintiff's application for general relief which were completed on December 4, 2012, May 27, 2014, and November 6, 2014, which opine that he was temporarily unable to work. (AR 405-406, 531-534.) These are opinions on the ultimate issue of disability instead of medical, clinical opinions. Plaintiff does not challenge the rejection of these opinions.

in the treatment record of Plaintiff's mental condition improving.[9]

The ALJ noted that Dr. Alexia Baca-Morgan, a treating clinician, between January 22, 2013, and March 8, 2013, assessed Plaintiff with a GAF between 61 and 66. (AR 25, 430, 432, 437, 443, 448.) LCSW Mark Jackson, another treating clinician, assessed a GAF score of 61 on November 18, 2013, and March 10, 2014. (AR 25, 463, 465, 474, 476, 489, 493, 496.) However, he also assessed between 52 and 60 between February 12, 2014, and October 14, 2014. (AR 25, 483, 506, 510, 520, 524.) On November 6, 2012, Dr. Portnoff assessed a GAF of 52, and on December 6, 2012, LCSW Lois Ratzlaff assessed a GAF of 60. (AR 25, 390, 416.)

The ALJ pointed out that these GAF scores are consistent with treatment reports showing a logical thought process with unremarkable thought content, fair reasoning, fair impulse control, and fair insight and judgment on November 18, 2013, December 9, 2013, January 8, 2014, February 12, 2014, and March 10, 2014. (AR 25, 463, 465, 473-474, 483, 489.) The ALJ also found that the GAF scores are further bolstered because Dr. Baca-Morgan and Mr. Jackson are treating sources who routinely saw and treated Plaintiff. (AR 25.)

"A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698, at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)). "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" McFarland v. Astrue, 288 F.App'x 357, 359 (9th Cir. 2008) (unpublished)[10] (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)). However,

---

[9] Defendant points to Ms. Ratzlaff's December 6, 2012 treatment note which indicates that Plaintiff's judgment was improving. (See AR 416.) However, this note is not part of the treatment reports from Dr. Baca-Morgan and Mr. Jackson. The Court notes that the treatment reports from Dr. Baca-Morgan and Mr. Jackson indicate that Plaintiff's condition worsened after this December 6, 2012 treatment note. Defendant also points to Plaintiff's hearing testimony regarding Plaintiff's improvement on medication, but the ALJ did not cite to Plaintiff's hearing testimony as a reason for rejecting Dr. Portnoff's opinion. Therefore, the Court does not consider this post hoc rationalization.

[10] Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1. Ninth Circuit Rule 36-3(b); see Animal Legal Def. Fund v. Veneman,

GAF scores are relevant and may be considered by the ALJ in considering the claimant's general functional abilities. Graham v. Astrue, 385 F.App'x 704, 706 (9th Cir. 2010).

Here, the ALJ considered that Plaintiff's treating providers had generally assessed him with a GAF score between 61 and 66 which indicate only mild symptoms or some difficulties in social, occupational or school functioning. (AR 25.) See also Macias v. Colvin, No. 1:15-CV-00107-SKO, 2016 WL 1224067, at *7 (E.D. Cal. Mar. 29, 2016) (A GAF score of 61 to 70 indicates mild symptoms or some difficulty in social, occupational, or school functioning.)

Plaintiff was first seen for treatment on December 6, 2012, and was assessed with a GAF of 60. (AR 416.) Plaintiff had some short term memory problems. (AR 416.) Plaintiff's comprehension was found to be good. (AR 416.) His general fund of knowledge was limited. (AR 416.) Judgment was improving and insight was good. (AR 416.) Plaintiff reported that he liked to talk to people and enjoys reading, but had anxiety, sadness, tearfulness, sleep disturbances, and nightmares. (AR 416.)

On January 22, 2013, Plaintiff was assessed with a GAF of 65. (AR 443, 447.) On February 15, 2013, Plaintiff attended group therapy and was assessed with a GAF of 61. (AR 437.) On March 4 and 8, 2013, Plaintiff attended group therapy and was assessed with a GAF of 65 and 66 respectively. (AR 432, 430.)

On November 18, 2013, Plaintiff reported feeling depressed and stuck in life. (AR 462.) Plaintiff's appearance was appropriate. (AR 462.) He was oriented to person, place, time and situation. (AR 462.) His behavior and psychomotor behavior were unremarkable. (AR 462.) Speech and affect were appropriate. (AR 462.) Plaintiff's mood was depressed. (AR 462.) Plaintiff's memory was intact. (AR 462.) Sensorium was clear consciousness. (AR 462.) Intellect was average. (AR 462.) Attention was distracted and recalling details of past. (AR 462.) Reasoning, impulse control, judgment and insight were fair. (AR 462.) Self-perception was realistic; thought process was logical; and thought content was unremarkable. (AR 462.) Plaintiff was assessed with a GAF of 61. (AR 463.)

---

490 F.3d 725, 733 (9th Cir. 2007) ("as of January 1, 2007, we must now allow parties to cite even unpublished dispositions and unpublished orders as persuasive authority").

On December 9, 2013, Plaintiff reported that he had been unable to refill his medication because he had no insurance coverage. (AR 464.) He was having problems sleeping. (AR 464.) Behavior and psychomotor behavior were unremarkable. (AR 465.) Speech and affect were appropriate. (AR 465.) Mood was depressed. (AR 465.) Memory was intact. (AR 465.) Sensorium was clear consciousness. (AR 465.) Intellect was average. (AR 465.) Attitude was hopeful, discouraged and concerned about housing review of disability criteria. (AR 465.) Plaintiff's attention was maintained. (AR 465.) Reasoning, impulse control, judgment and insight were fair. (AR 465.) Thought process was logical and thought content was unremarkable. (AR 465.) Plaintiff was assessed with a GAF of 61. (AR 465.)

Plaintiff was seen again on January 8, 2014 and reported that his symptoms were poorly controlled and he was currently not able to fill his prescriptions because of coverage issues. (AR 471.) Examination results were unchanged although Plaintiff's attitude was hopeful and cooperative. (AR 473-474.) Similarly, Plaintiff was seen on January 21, 2014 with no change noted in his mental status. (AR 475-476.)

On February 12, 2014, Plaintiff was seen complaining that he was frustrated that he had not been able to get his medications. (AR 482.) Plaintiff's mental examination was unchanged and he was assessed with a GAF of 60. (AR 483.)

On March 10, 2014, Plaintiff was seen and stated that he has been calming down and changes while frustrating and still upsetting were not as much. (AR 488.) He was sleeping better on his medication. (AR 488.) Plaintiff had no change in his mental status on examination, although his mood is described as irritable. (AR 488-489.) He was assessed with a GAF of 61. (AR 489.)

On April 14, 2014, Plaintiff was seen with an improved mood. (AR 492.) Plaintiff reported he was working with a friend in the recycling business and it felt good to be focused on something else. (AR 492.) Plaintiff's mood was euthymic[11] and his attitude was cooperative and hopeful. (AR 493.) Plaintiff was still taking some pills as needed for sleep at night. (AR

---

[11] Moderation of mood, not manic or depressed. Stedman's Medical Dictionary 678 (28th Ed. 2006).

492.)  He was noted to have a GAF of 61.  (AR 493.)

On May 12, 2014, Plaintiff was seen for individual therapy and reported that he was working almost daily with his friend helping in his recycling business and staying with his routine.  (AR 494-495.)  Plaintiff was assessed with a GAF of 61.  (AR 496.)

On July 17, 2014, Plaintiff had an initial examination with Dr. Morgan.  (AR 498-503.) He reported functioning as somewhat difficult and complaining of anxious, fearful thoughts, depressed mood, difficulty falling asleep, diminished interest or pleasure, excessive worry, fatigue, and loss of appetite.  (AR 498.)  Plaintiff reported that he was currently working about 15 hours per week in his friend's recycling business.  (AR 500)  He did not currently want medication for his depression.  (AR 500)  On examination, Plaintiff's mood was mild depression. (AR 503.)  He had full affect; clear speech; and logical thought process.  (AR 503.)  Perception, cognition, insight were within normal limits.  (AR 503.)  Plaintiff's ability to make reasonable decisions was impaired, but his judgment was within normal limits.  (AR 503.)  Intelligence was average.  (AR 503.)

On August 19, 2014, Plaintiff reported not sleeping well despite air conditioner being on at night.  (AR 505.)  He was having nightmares about family fights, his childhood and the anniversary of his sister swindling him out of his home.  (AR 505)  Plaintiff was working a few hours with a friend who recycles batteries with farmers.  (AR 506.)  Plaintiff was assessed with a GAF of 60.  (AR 506.)

On September 8, 2014, Plaintiff reported not sleeping well and having nightmares and struggling with family memories.  (AR 508.)  He had missed work due to feeling down.  (AR 508-509.)  Plaintiff was assessed with a GAF 55.  (AR 510.)

On September 25, 2014, Plaintiff reported having trouble sleeping for the past three days. (AR 518.)  He also reported that his boss was going to close the business.  (AR 518.)  Plaintiff was assessed with a GAF of 52.  (AR 520.)

On October 14, 2014, Plaintiff reported that he had been unable to find any side jobs recycling due to a housing inspection.  (AR 522.)  He was feeling down with the holidays coming up and a missing a friend who had been killed by the police.  (AR 523.)  Plaintiff was

assessed with a GAF of 52. (AR 524.)

While the ALJ gave significant to the Global Assessment of Function ("GAF") scores assessed by Plaintiff's treating doctors and licensed social workers assessed finding them generally consistent with the other evidence and the treatment reports which showed a logical thought process with unremarkable thought content, and fair reasoning, impulse control, insight, and judgment (AR 25), this was not the reason the ALJ provided to reject the opinion of Dr. Portnoff. Rather the ALJ found that the record demonstrates that Plaintiff's symptoms are improving. However, review of the record demonstrates that Plaintiff presented for treatment with a GAF indicating mild symptoms and the examination findings show some depression but generally normal findings. However, around the time Plaintiff lost his job because the business closed in September 2014, the record demonstrates that his GAF was assessed as 52 to 55 indicating "moderate symptoms or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)." <u>Cornelison</u>, 2011 WL 6001698, at 4 n.6 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 34). Therefore, the Court finds that substantial evidence does not support the ALJ's finding that the medical record demonstrates that Plaintiff's symptoms were improving.

The ALJ's finding that Dr. Baca-Morgan and Mr. Jackson's treatment reports show Plaintiff's condition was improving is not a specific and legitimate reason to reject Dr. Portnoff's opinion.[12] Accordingly, the Court finds that the ALJ erred by not providing specific and legitimate reasons supported by substantial evidence for rejecting Dr. Portnoff's opinion.

### b. Dr. Reinfurt's Opinion

Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Reinfurt's opinion that Plaintiff would have difficulty managing a full workday with the standard schedule of breaks. Plaintiff contends that Dr. Reinfurt's opinion should receive the

---

[12] Defendant contends that Plaintiff's reported daily activities undermined the extreme opinions of Dr. Portnoff and Dr. Reinfurt. However, the ALJ did not provide this as a reason for rejecting either of these opinions, and therefore, the Court does not consider this reason provided by Defendant.

greatest weight because she examined Plaintiff, including objective cognitive function and memory testing, and reviewed Dr. Portnoff's report and Plaintiff's mental health record.

Dr. Reinfurt performed a consultative examination at the request of the state agency on July 1, 2013. (AR 450-453.) She administered objective testing of Plaintiff's cognitive functioning and memory and reviewed Dr. Portnoff's report in November 2012 and a Core Assessment for Fresno County Mental Health Plan dated December 2012. (AR 450-453.) Plaintiff had clear and coherent speech and he was quite articulate with a vocabulary developed beyond someone with his limited education and abusive history. (AR 451.) He appeared to adequately understand Dr. Reinfurt's directions and comments. (AR 451.) His affect was mildly blunted and congruent with underlying mood. (AR 451.) There was sadness in his tone when he spoke of being completely alone in his world, but frustration tolerance was adequate. (AR 451.) He was alert and oriented for person, place, time, and situation. (AR 451.) His autobiographical information differed in some details from other assessments as to the length of his marriage and the types of work that he had been engaged in. (AR 451.) Cognitive ability was low average to average even though some test scores fell below this level and there was no evidence of disordered thinking or bizarre ideation. (AR 451.) He had good attention and concentration, but his actual processing of meaning from both auditory linguistic materials and visual information was rather deficient and she believed that it is possible that the processing limitations relate to the vascular event. (AR 451-452.)

Dr. Reinfurt diagnosed Plaintiff with vascular dementia, major depression, and PTSD. (AR 452.) She opined that he should be able to recall and implement simple instructions. (AR 452.) However, more complex might pose a challenge, but he should be able to comply if repeated and demonstrated. (AR 452.) Changes in routine should not be a problem if they are explained, but consistency and routine at this point in his life would be therapeutic. (AR 452.) His independent reasoning ability is limited at present. (AR 452.) She found that:

> His depression, if not controlled, might limit his ability to work as might some of the cognitive limitations involving information processing. Distortions and confusion undermine functioning. On a one-to-one basis, [Plaintiff] is quite personable. His descriptions of his programs imply that he appreciates structured ways to connect with others. A history of abuse and perceived betrayal, however,

has left him wounded and wary and may create barriers with coworkers and supervisors. For reasons just discussed, the examiner believes that, at the present time, [Plaintiff] would have difficulty managing a full workday with the standard schedule of breaks. He should be able to manage his money.

(AR 452.)

First, the ALJ rejected Dr. Reinfurt's opinion that Plaintiff would have difficulty managing a full workday with the standard schedule of breaks at the time of the evaluation because it is vague, conclusory, calls for speculation as to its intended meaning and scope, and it is tentative. (AR 26.)

Plaintiff asserts that this is not a specific or legitimate reason to reject Dr. Reinfurt's opinion because the ALJ did not explain why the significant findings during Dr. Reinfurt's examination and Dr. Portnoff's examination, which Dr. Reinfurt reviewed, do not support Dr. Reinfurt's finding. Plaintiff also contends that the opinion that Plaintiff has deficits in the ability to manage a full workday with standard breaks is not vague because if an individual has a significantly impaired ability to perform sustained work in a competitive environment, then he or she is disabled. Defendant asserts that Dr. Reinfurt's and Dr. Portnoff's examination findings contradict the opinion.

It is unclear what the basis is for Dr. Reinfurt's finding that Plaintiff would have difficulty managing a full workday with the standard schedule of breaks. Dr. Reinfurt does not explain how much of a problem Plaintiff would have managing a full workday. As the ALJ found, this statement regarding difficulty managing a full workday with the standard schedule of breaks calls for speculation as to what this means and the scope and it is vague. Further, as the ALJ found this is inconsistent with the treatment records which indicate that Plaintiff has improving judgment, good insight, full orientation, appropriate mood and affect, logical thought process, unremarkable thought content, fair reasoning and impulse control and a cooperative and helpful attitude. (AR 26-27, 416, 462-463, 464-465, 474, 475-476, 482-483, 488, 492-493, 495, 500, 503, 506.)

Therefore, the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence to reject Dr. Reinfurt's opinion.

### c.    Dr. Aquino-Caro's Opinion

Plaintiff asserts that the ALJ improperly rejected part of the opinion of Dr. Aquino-Caro, a state agency reviewing physician.  Plaintiff argues that the ALJ improperly rejected Dr. Aquino-Caro's opinion that Plaintiff was moderately limited in his ability to respond appropriately to changes in a work setting because he did not provide any reasons for the rejection.  Plaintiff also asserts that the ALJ impermissibly rejected other moderate limitations, and did not even address them.  Defendant asserts that the ALJ properly discounted the opinion of Dr. Aquino-Caro for the same reasons the ALJ discounted the opinions of Dr. Portnoff and Dr. Reinfurt.  However, the ALJ did not provide this as a reason and the Court will not consider this post hoc rationalization.  The Court next reviews Dr. Aquino-Caro's opinion and the ALJ's decision to determine if the ALJ impermissibly rejected parts of the opinion without providing legally adequate reasoning.

The ALJ gave Dr. Aquino-Caro's opinion some weight and found that the opinion supports a finding that Plaintiff is limited to simple, routine tasks.  (AR 27.)

While Dr. Aquino-Caro found that Plaintiff had moderate limitations in understanding and remembering detailed instructions, Dr. Aquino-Caro explained in the narrative form section for specific understanding and memory limitations that Plaintiff retained the ability to do simple tasks.[13]  (AR 79-80, 94-95.)  In the sustained concentration and persistence section of the form, Dr. Aquino-Caro found that Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.  (AR 80, 95.)  However, Dr. Aquino-Caro found in the narrative section for these sustained concentration and persistence limitations that Plaintiff can do simple work.  (AR 80, 95.)  In the adaptation

---

[13] The Court notes that the mental residual function capacity assessment section on the forms that Dr. Aquino-Caro filled out indicates that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes."  (AR 79, 94.)

limitations section, Dr. Aquino-Caro opined that Plaintiff is moderately limited in his ability to respond appropriately to changes in the work setting, but in the narrative form section found that Plaintiff can make plans and goals. (AR 80, 95.)

Each individual rating in the understanding and memory, sustained concentration and persistence, and adaptation limitations section is subsumed in the narrative section for those limitations. The narrative sections indicate that Dr. Aquino-Caro believes that Plaintiff can do simple tasks, simple work, and make plans and goals. (AR 80, 95.) The ALJ found that Dr. Aquino-Caro's opinion supports a finding that Plaintiff is limited to simple, routine tasks and the RFC states that Plaintiff is limited to performing only simple, routine tasks. (AR 23, 27.) Therefore, the Court finds that the ALJ properly considered Dr. Aquino-Caro's findings and incorporated the findings into the RFC.

### d. Dr. Garland's Opinion

Plaintiff asserts that the ALJ only gave limited weight to the opinion of Dr. Garland, but rejected his opinion that Plaintiff had to work in settings with low social contact. Defendant asserts that the ALJ properly discounted the opinion of Dr. Garland for the same reasons the ALJ discounted the opinions of Dr. Portnoff and Dr. Reinfurt. However, the Court is constrained to consider the reasons provided by the ALJ to reject a physician opinion.

Dr. Garland opined that Plaintiff was capable of meeting the basic mental demands of competitive, remunerative, unskilled work on a sustained basis, particularly in settings of low social contact. (AR 27, 129-131, 146-148.) The ALJ gave the opinion limited weight because it is not fully consistent with the other evidence indicating that he has only mild limitations relative to social interaction. The ALJ then provided examples of evidence in the record for this finding. (AR 27.)

The ALJ pointed out that Plaintiff's social limitations are unsupported by treatment reports which showed that he had a cooperative and helpful attitude and good insight with improving judgment. (AR 27, 416, 473.) A December 6, 2012 Fresno County Mental Health Plan assessment by LCSW Lois Ratzlaff notes that Plaintiff has good insight and improving judgment. (AR 416.) On January 8, 2014, Mr. Jackson found that Plaintiff's attitude was

cooperative and hopeful. (AR 474.) Further, Plaintiff's attitude was hopeful, discouraged, and concerned about a housing review of disability criteria on December 9, 2013, cooperative, hopeful, and discouraged on January 21, 2014, cooperative and discouraged on February 12, 2014, hopeful on March 10, 2014, and cooperative and hopeful on April 14, 2014. (AR 476, 483, 489, 493.) There are treatment notes that Plaintiff had fair insight and judgment on November 18, 2013, December 9, 2013, January 8, 2014, January 21, 2014, February 12, 2014, March 10, 2014, and April 14, 2014. (AR 463, 465, 474, 476, 483, 489, 493.) Therefore, inconsistency with the treatment notes is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Garland's low social contact limitation.

The ALJ also found that the low social contact limitation is inconsistent with Plaintiff's testimony concerning his activities of daily living, such as socializing with other residents in his building, riding the bus three to four times a week, and going shopping. (AR 27.) Plaintiff testified that normally he goes downstairs and sits on the couches in the lobby of his building during the morning. (AR 55.) He talks to people if they talk to him and he smiles at everybody, but he does not get into lengthy communications. (AR 55-56, 65.) He also testified that he does not have a vehicle, so he uses a city bus for transportation 3 to 4 times a week to go to the grocery store and the doctor's office. (AR 42, 52.) These daily activities are inconsistent with Dr. Garland's opinion that Plaintiff was limited to settings of low social contact. Therefore, the Court finds that the inconsistency between Plaintiff's daily activities and Dr. Garland's opinion regarding Plaintiff's tolerance of social interaction or contact is a specific and legitimate reason supported by substantial evidence for rejecting Dr. Garland's opinion. Accordingly, the Court finds that the ALJ provided specific and legitimate reasons to reject the opinion of Dr. Garland that are supported by substantial evidence in the record.

### C.      Remand

Plaintiff argues that this matter should be remanded for the award of benefits or, in the alternative, for further development of the record.[14]  Defendant contends that if the Court

---

[14] Plaintiff also notes in a footnote in the remedy section that the ALJ erred when finding Plaintiff could perform his past relevant work as a merchandise deliverer because this job requires a reasoning level of 3 and that level cannot

overturns the decision, the matter should be remanded for further administrative proceedings.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102

---

be performed by an individual who is limited to simple routine tasks. The Court notes that the ALJ found that "[a]lthough [Plaintiff] is capable of performing past relevant work, there are other jobs existing in the national economy that he is also able to perform." (AR 29.) Based on the VE's testimony, the ALJ cited cooks helper, food service worker, and industrial cleaner which are all SVP 2. The ALJ will have to reassess Plaintiff's RFC on remand, and therefore, the jobs that he is capable of performing may change.

(quoting <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir. 1989)).

While the Court cannot consider Defendant's post hoc rationalizations in determining whether the ALJ erred in rejecting the doctors' opinions and Plaintiff's testimony, these reasons show that an evaluation of the record as a whole creates serious doubt that Plaintiff is disabled. Plaintiff's x-rays of his lumbar spine show mild to moderate degenerative changes. (AR 403, 540.) Plaintiff's daily activities as stated in both his testimony and in the medical reports indicate he may not be as disabled as he alleges and may also be relevant to the opinions of the medical doctors.

While Plaintiff argues that if he is limited to sedentary work he is disabled under the grids, the agency physicians opined that Plaintiff is capable of light work and this is an issue that must be decided upon remand. Therefore, the Court finds that this case raises serious doubts as to whether Plaintiff is in fact disabled within the meaning of the Social Security Act. <u>Treichler</u>, 775 F.3d at 1106.

The Court finds that this action must be remanded for the ALJ to properly consider Plaintiff's symptom testimony, to consider the medical evidence in determining Plaintiff's RFC, and to determine whether jobs exist in the national economy that Plaintiff can perform.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# V.

## ORDER

Based on the foregoing, the Court finds that the ALJ erred in discrediting Plaintiff's testimony, failing to provide specific and legitimate reasons to reject the opinion of Dr. Portnoff, and, substantial evidence does not support Plaintiff's physical RFC. The Court finds that the ALJ did not err in evaluating the opinions of Dr. Vesali, Dr. Reinfurt, Dr. Aquino-Caro, and Dr. Garland.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED IN PART and this action shall be remanded for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff David Barrera and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __January 19, 2018__

_____
UNITED STATES MAGISTRATE JUDGE